UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| TD BANKNORTH, N.A., | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Docket No. 05-180-P-H |
| | ) | |
| KEYBANK, N.A., | ) | |
| | ) | |
| Defendant | ) | |

*RECOMMENDED DECISION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT*

The parties have filed cross-motions for summary judgment on the single count of the complaint in this action arising out of the presentment of an altered check. I recommend that the court deny the defendant's motion and grant that of the plaintiff.

### I. Summary Judgment Standard

### A. Federal Rule of Civil Procedure 56

Summary judgment is appropriate only if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Santoni v. Potter*, 369 F.3d 594, 598 (1st Cir. 2004). "In this regard, 'material' means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant. By like token, 'genuine' means that 'the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party.'" *Navarro v. Pfizer Corp.*, 261 F.3d 90, 93-94 (1st Cir. 2001) (quoting *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995)).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In determining

whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. *Santoni,* 369 F.3d at 598. Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); Fed. R. Civ. P. 56(e). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." *In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

"This framework is not altered by the presence of cross-motions for summary judgment." *Cochran v. Quest Software, Inc.*, 328 F.3d 1, 6 (1st Cir. 2003). "[T]he court must mull each motion separately, drawing inferences against each movant in turn." *Id*. (citation omitted); *see also, e.g., Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996) ("Cross motions for summary judgment neither alter the basic Rule 56 standard, nor warrant the grant of summary judgment *per se*. Cross motions simply require us to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed. As always, we resolve all factual disputes and any competing, rational inferences in the light most favorable to the [nonmovant].") (citations omitted).

### B.  Local Rule 56

The evidence the court may consider in deciding whether genuine issues of material fact exist for purposes of summary judgment is circumscribed by the Local Rules of this District. *See* Loc. R. 56. The moving party must first file a statement of material facts that it claims are not in dispute. *See* Loc. R. 56(b). Each fact must be set forth in a numbered paragraph and supported by a specific record

citation. *See id.* The nonmoving party must then submit a responsive "separate, short, and concise" statement of material facts in which it must "admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts[.]" Loc. R. 56(c). The nonmovant likewise must support each denial or qualification with an appropriate record citation. *See id.* The nonmoving party may also submit its own additional statement of material facts that it contends are not in dispute, each supported by a specific record citation. *See id.* The movant then must respond to the nonmoving party's statement of additional facts, if any, by way of a reply statement of material facts in which it must "admit, deny or qualify such additional facts by reference to the numbered paragraphs" of the nonmovant's statement. *See* Loc. R. 56(d). Again, each denial or qualification must be supported by an appropriate record citation. *See id.*

Failure to comply with Local Rule 56 can result in serious consequences. "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." Loc. R. 56(e). In addition, "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment" and has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of fact." *Id.*; *see also, e.g., Cosme-Rosado v. Serrano-Rodriguez*, 360 F.3d 42, 45 (1st Cir. 2004) ("We have consistently upheld the enforcement of [Puerto Rico's similar local] rule, noting repeatedly that parties ignore it at their peril and that failure to present a statement of disputed facts, embroidered with specific citations to the record, justifies the court's deeming the facts presented in the movant's statement of undisputed facts admitted." (Citations and internal punctuation omitted).

## II. Factual Background

The plaintiff is a national bank with its principal place of business located in Portland, Maine. Statement of Material Facts in Support of Defendant Keybank N.A.'s Motion for Summary Judgment ("Key SMF") (Docket No. 13) ¶ 19; Plaintiff TD Banknorth, N.A.'s Opposing Statement of Material Facts, etc. ("Banknorth Responsive SMF") (Docket No. 16) ¶ 19.[1] The defendant is a national bank with its principal place of business located in Cleveland, Ohio. Additional Statement of Material Facts, etc. ("Banknorth SMF") (included in Banknorth Responsive SMF, beginning at 2) ¶ 1; Defendant Keybank, N.A.'s Opposition to Plaintiff TD Banknorth, N.A.'s Additional Statement of Material Facts, etc. ("Key Responsive SMF") (Docket No. 21) ¶ 1. Keybank maintains retail banking branches among its other business operations in the State of Maine. *Id.* ¶ 2.

On or about May 20, 2005 System Designs, Inc. ("Systems") presented for deposit to its account at the Olympus Hills branch of Keybank in Salt Lake City, Utah, a check numbered 55147 in the amount of $90,233.88. Key SMF ¶ 1; Banknorth Responsive SMF ¶ 1. The check was drawn by Summit Packaging System, Inc. ("Summit") of Manchester, New Hampshire, on its checking account at the plaintiff's bank in Portland, Maine. *Id.* At that time, Systems was a customer in good standing at Keybank. *Id.* ¶ 2. Systems had opened its account on January 24, 1997 at the same Olympus Hills branch at which the check was presented. *Id.*

Sometime after Summit's check # 55147 was placed in the mail by Summit, it was stolen and altered. Banknorth SMF ¶ 3; Key Responsive SMF ¶ 3. Geri McMurdie, a teller at Keybank's Olympus Hills branch, received the check for deposit. Keybank SMF ¶ 3; Banknorth Responsive SMF ¶ 3. Pursuant to Keybank's policy at that time, any check presented for deposit in excess of $5,000.00 was automatically placed in a "large deposit" file. *Id.* ¶ 4. Any such check was required to be

---

[1] The parties do not dispute any of the facts in each other's statement of material facts submitted pursuant to Local Rule 56.

reviewed by an officer of the branch to determine whether a "hold" should be placed on the check thereby making funds unavailable until the check cleared. *Id*. McMurdie followed Keybank's procedure in every respect: she placed the check in a large deposit file and she advised the customer that the funds would not be available pursuant to Keybank's policy. *Id*. ¶ 5. The customer acknowledged the "hold." *Id*.

McMurdie's personal inspection of the check did not reveal anything extraordinary about the check. *Id*. ¶ 6. The signatures were original ink rather than stamped, there was no "washing" of the payee's name or the amount of the check and the font on the amount of the check as well as the payee, date and other information all appeared to be original and the same. *Id*. Nothing from her inspection of the check raised any concerns about the validity of the check. *Id*. Pursuant to Keybank's policy, a digital copy of the check was made. *Id*. ¶ 7. Pursuant to that policy, the original check was held for 60 days and then destroyed. *Id*. The original check no longer exists. *Id*.

Christina L. Simmons, the assistant manager at the Olympus Hills branch, was the authorized officer of Keybank who reviewed the photocopy of the check on the day of deposit, in accordance with the bank's policy. *Id*. ¶ 8. Simmons' personal inspection of the photocopy of the check did not reveal anything extraordinary about the check. *Id*. ¶ 9. Nothing from her inspection of the photocopy of the check raised any concerns about its validity. *Id*.

Keybank sought funds from Banknorth and the check cleared on May 20, 2005. *Id*. ¶ 11. Banknorth paid Keybank $90,233.38 on the altered check, debiting Summit's account by that amount, on or about May 20, 2005. Banknorth SMF ¶ 4; Keybank Responsive SMF ¶ 4.

During the week of June 20, 2005, Michael E. Conway, the chief financial officer of Summit, along with his assistant, did a reconciliation of all checks that had been issued by Summit, identifying whether the amounts indicated on the bank statement from Banknorth for checks that had cleared

matched Summit's own records. Keybank SMF ¶ 12; Banknorth Responsive SMF ¶ 12. Conway discovered that the amount that had been paid on check # 55147, as reflected in Banknorth's statement of Summit's account for the period of April 30 to May 27, 2005, did not match the amount for which the check had been originally issued, as reflected on the actual stub for check # 55147. *Id.* ¶ 13. Conway further determined that check # 55147 had been issued to Universal Logistics, a Canadian supplier to Summit, for invoices totaling $8,233.88. *Id.* ¶ 14. Conway then contacted Banknorth and received by facsimile a digitized copy of the check, which reflected Systems as the payee. *Id.* ¶ 15.

The payee and the amount of check # 55147 were altered, but the signatures on the check were the original signatures. *Id.* ¶ 16. Conway confirmed that the signatures on the check were those of Scott Gilroy and himself, authorized signatories of Summit, the drawer of the check. *Id.* ¶ 10. On June 28, 2005 Conway filed with Banknorth an affidavit of forgery for check # 55147, indicating that the check amount had been raised and the payee's name had been altered. *Id.* ¶ 17. Summit asserted a claim against Banknorth for the loss of $90,233.88. Banknorth SMF ¶ 5; Keybank Responsive SMF ¶ 5. Banknorth subsequently re-credited Summit's account in the amount of $90,233.38. *Id.* ¶ 6.

### III. Discussion

The complaint alleges a single count of breach of presentment warranty.[2] Complaint (Docket No. 1) ¶¶ 15-17. For the purposes of its motion, Keybank does not dispute that the check it presented to Banknorth was altered. Motion at 1. Keybank contends that the "fictitious payee" defense bars

---

[2] "If an unaccepted draft is presented to the drawee for payment or acceptance and the drawee pays or accepts the draft, the person obtaining payment or acceptance, at the time of presentment and a previous transferor of the draft, at the time of transfer, warrant to the drawee making payment or accepting the draft in good faith that: **(a)** The warrantor is, or was, at the time the warrantor transferred the draft, a person entitled to enforce the draft or authorized to obtain payment or acceptance of the draft on behalf of a person entitled to enforce the draft; **(b)** The draft has not been altered; . . . ." 11 M.R.S.A. § 3-1417(1); Utah Code Ann. § 70A-3-417(1). Keybank takes the position that Utah law applies to this action, Defendant Keybank, N.A.'s Motion for Summary Judgment, etc. ("Motion") (Docket No. 12) at 3. Banknorth appears to contend that Maine law governs. Plaintiff TD Banknorth, N.A.'s Combined Cross-Motion for Summary Judgment and Opposition to Keybank, N.A.'s Motion for Summary Judgment, etc. ("Cross-Motion") (Docket No. 15) at 3. The parties agree that the statutes applicable to this dispute, which are sections of the Uniform Commercial Code, are identical in both jurisdictions. Motion at 3; Cross-Motion at 3-4.

Banknorth's claim. *Id*. at 2. This defense is an exception to the general rule that a party accepting or paying an instrument will ultimately be liable for any resulting loss. *Universal Premium Acceptance Corp. v. York Bank & Trust Co.*, 69 F.3d 695, 701 (3d Cir. 1995). The exception provides that an endorsement by any person in the name of the designated payee is effective if the drawer intends the payee to have no interest in the instrument; it is intended to protect banks that cash such instruments "and is based on the assumption that as between the bank and the drawer, the latter is in a better position to prevent the loss." *Id*. The statutory language provides as follows:

>  **(1)** If an imposter by use of the mails or otherwise induces the issuer of an instrument to issue the instrument to the imposter, or to a person acting in concert with the imposter, by impersonating the payee of the instrument or a person authorized to act for the payee, an indorsement of the instrument by any person in the name of the payee is effective as the indorsement of the payee in favor of a person who in good faith pays the instrument or takes it for value or for collection.
>
>  **(2)** If a person whose intent determines to whom an instrument is payable . . . does not intend the person identified as payee to have any interest in the instrument or the person identified as payee of an instrument is a fictitious person, the following rules apply until the instrument is negotiated by special indorsement.
>> **(a)** Any person in possession of the instrument is its holder.
>> **(b)** An indorsement by any person in the name of the payee stated in the instrument is effective as the indorsement of the payee in favor of a person who, in good faith, pays the instrument or takes it for value or for collection.
>
>  **(3)** Under subsection (1) or (2), an indorsement is made in the name of a payee if:
>> **(a)** It is made in a name substantially similar to that of the payee; or
>> **(b)** The instrument, whether or not indorsed, is deposited in a depositary bank to an account in a name substantially similar to that of the payee.
>
>  **(4)** With respect to an instrument to which subsection (1`) or (2) applies, if a person paying the instrument or taking it for value or for collection fails to exercise ordinary care in paying or taking the instrument and that failure

> substantially contributes to loss resulting from payment of the instrument, the person bearing the loss may recover from the person failing to exercise ordinary care to the extent the failure to exercise ordinary care contributed to the loss.

11 M.R.S.A. § 3-1404; Utah Code Ann. 70A-3-404. In this case, the authorized signers of the Summit check intended to pay Universal Logistics, not Systems. Keybank contends that this brings the check within section 404 and, because it exercised ordinary care in its handling of the check, Banknorth's claim is barred. Motion at 6-10.

Banknorth contends that the fictitious payee defense is not available to Keybank because Summit intended to pay Universal Logistics, the listed payee before the check was altered. Cross-Motion at 5-7. There is little or no case law directly on point. However, the history of this section of the Uniform Commercial Code is instructive. In *National Accident Ins. Underwriters, Inc. v. Citibank, F.S.B.*, 243 F.Supp.2d 763 (N.D.Ill. 2002), an employee of the plaintiff intercepted checks made payable to the plaintiff by its customers and altered the checks by adding an additional payee, *id.* at 764. He endorsed the checks in the names of the altered payee and deposited them in the defendant bank. *Id*. The plaintiff sued the bank for statutory conversion under Illinois law. *Id*. The defendant bank argued that under section 3-404 of the Uniform Commercial Code (identical to the Maine and Utah versions) it was not liable to the plaintiff. *Id*. at 765. The court's discussion of the defense merits quotation at length.

> The section upon which defendant relies is known as the "fictitious payee" rule. The statutory fictitious payee rule covers situations where a bank honors a check bearing the forged indorsement of a fictional payee. By deeming the forged indorsement to be effective, the rule relieves a bank from liability and places the loss on the drawer of the checks, who is thought to be in the best position to avoid the loss. The Uniform Commercial Code Comment to section 3-404 specifically explains this rationale:
>
>> If a check payable to an impostor, fictitious payee, or payee not intended to have an interest in the check is paid, the effect of subsections (a) and (b) is to place that loss on the *drawer of the check* rather than on the drawee or the Depositary Bank that took the check

8

> for collection. . . . [F]raud is almost always involved in cases governed by subsection (b). The drawer is in the best position to avoid the fraud and thus should take the loss.

810 ILCS 5/3-404 (Comment (*emphasis added*)). Thus, it is clear that the section upon which defendant relies applies to situations involving drawees and their employees or agents. Indeed, that was specifically what the rule was originally designed to address. Because the earlier version of the rule did not apply when checks were bona fide when written but later intercepted by a faithless employee, it was expanded to its present version to cover instances where an employee with signing authority signs a check intending that the named payee receive it but later changes his mind and steals the check, indorsing it in the name of the payee. Needless to say, there is nothing in the rule, its history, or cases analyzing it, to suggest the rule applies to situations — such as the one here — between payees and drawee banks. All of the example[s] cited in the comments to the UCC involve fraud or forgery occurring in the drawing or issuance of checks; courts have even held that if the intent to commit forgery arise[s] after the check is issued, section 3-404 does not apply. Simply put, defendants offer nothing to convince the court that the normal application of the rule should be extended to cover the instant case. Indeed, courts are generally reluctant to expand on the rule's coverage[.]

*Id*. at 765-66 (internal punctuation and other citations omitted). *See also* 11 M.R.S.A. § 3-1404, Uniform Commercial Code Comment; Utah Code Ann. § 70A-3-404, Uniform Commercial Code Comment. In this case, the intent to commit forgery arose after the check was issued by Summit, when check # 55147 was stolen and altered.

It is clear that subsection (1) of 11 M.R.S.A. § 3-1404 and Utah Code Ann. § 70A-3-404 does not apply to this case; there is no claim that Summit was induced to issue the check to an imposter.[3] Summit issued the check to the party to whom it intended to issue the check. It is only subsection (2) of section 404 that is at issue here. The only case cited as authority on point by Keybank, *Shearson Lehman Bros., Inc. v. Wasatch Bank*, 788 F. Supp. 1184 (D. Utah, 1992), Motion at 7, deals only with subsection (1) of an earlier version of the Utah statute and is applicable only to situations in which an

---

[3] For this reason, Banknorth's reliance on *Hibernia Nat'l Bank v. Commerce Bank, N.A.*, 845 A.2d 664 (N.J. Super., App. Div. 2004), Cross-Motion at 5-6, is misplaced. In that case, only subsection (1) — in the relevant New Jersey statute identified as subsection (a) — was invoked as a defense. *Id*. at 666-68.

9

employee or agent of the drawer "supplies" the name of the payee to the drawer, *id.* at 1191, which is distinguishable from the factual situation in the case at hand.

Because section 404 was not intended to reach situations in which the check is altered by a third party, it is not necessary to reach the other issues addressed by the parties: which of the banks was in the best position to avoid the fraud and whether Keybank exercised ordinary care in depositing the check. The answer to the first question is not at all clear under the particular circumstances of this case. The answer to the second does not depend, as Keybank apparently would have it, Defendant Keybank, N.A.'s Combined Opposition to TD Banknorth N.A.'s Cross-Motion for Summary Judgment and Reply, etc. ("Key Opposition") (Docket No. 20) at 4 & Additional Opposing Statement of Material Facts (included in Key Responsive SMF, beginning at 2) ¶¶ 1-3, on whether Banknorth had timely implemented its "positive match" security procedure. Keybank has offered no evidence that would allow the drawing of a reasonable inference to the effect that use of the "positive match" security procedure was sufficiently widespread to constitute the use of ordinary care in banking at the time the altered check was deposited by Systems.

Keybank offers no other defense to Banknorth's cross-motion for summary judgment. Key Opposition at 1-5. Accordingly, Banknorth is entitled to summary judgment. Motion at 4 ("Key technically breached its presentment warranty to Plaintiff").

### IV. Conclusion

For the foregoing reasons, I recommend that the motion of the defendant for summary judgment (Docket No. 12) be **DENIED** and that the plaintiff's cross-motion for summary judgment (Docket No. 15) be **GRANTED**.

### *NOTICE*

***A party may file objections to those specified portions of a magistrate judge's report or***

*proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within ten (10) days after being served with a copy thereof.   A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 5th day of June, 2006.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge